**SIGNED THIS: March 25, 2010**

_____
THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: | ) |
| | ) |
| LORI D. STENSTROM, | )   No. 09-83239 |
| | ) |
| Debtor. | ) |

**O P I N I O N**

The matter before the Court is the confirmation of the Chapter 13 plan filed by the Debtor, Lori D. Stenstrom (DEBTOR), and the objection by Michael D. Clark, Chapter 13 Trustee (TRUSTEE). Confirmation will be denied.

The facts are not in dispute.[1] The DEBTOR, who is single with no dependents, filed a Chapter 13 petition on October 5, 2009. On Schedule B, she listed her ownership interest in three vehicles, a fully encumbered 2008 Ford Edge valued at $14,500, a 1998 Firan Raven Motorhome valued at $8,155 and a 2005 Double Tree Fifth Wheel valued at $22,150.[2] On Schedule D, she listed Citizens Bank as a secured creditor holding a security interest in the

---

[1]The matter was submitted to the Court on briefs filed by the parties, without an evidentiary hearing.

[2]The DEBTOR'S schedules list Harris NA as holding a claim of $23,000 secured by the Ford Edge. The TRUSTEE does not challenge the DEBTOR'S right to claim an operating expense or an ownership deduction for this vehicle.

motorhome and The American National Bank as holding a security interest in the fifth wheel. The DEBTOR listed net monthly income after payroll deductions of $3,238. Schedule J listed monthly expenses of $2,730, including a payment on the Ford Edge of $426, leaving monthly disposable income of $508. Payments on the motorhome or the fifth wheel are not reflected on Schedule J.

The Chapter 13 plan filed by the DEBTOR proposes to pay $425 per month for 60 months with a proposed dividend of 24% to unsecured creditors. According to the plan, the payments on the motorhome and the fifth wheel are to be made by the co-debtor. Along with her petition, the DEBTOR submitted Form 22C, the "Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income." Because her annualized current monthly income of $61,116 exceeds the applicable median family income for a household size of one, the DEBTOR is required to calculate her disposable income according to Form 22C, which implements the means test, in order to determine her monthly disposable income. Even though the DEBTOR'S plan provides that the payments on the motorhome and the fifth wheel are to be made by the co-debtor, the DEBTOR takes a vehicle operation expense deduction for two vehicles and deducts an ownership expense for the motorhome on Form 22C. (Form 22C, lines 27A and 29, Docket Number 1). According to Form 22C, after deducting those amounts, the DEBTOR is left with monthly disposable income of $329.70.

On November 16, 2009, Citizens Banking Corporation filed a motion for relief from the co-debtor stay, alleging that the plan provides that the payments will be made by the

co-debtor. The DEBTOR did not respond to the motion and an order granting the requested relief was entered by the Court on December 8, 2009.  A confirmation hearing was held on December 21, 2009.[3]  The TRUSTEE objected to confirmation, contending that the DEBTOR'S plan, which does not provide for payment in full of the claims of unsecured creditors, violates Section 1325(b)(1)(B), which requires that all of the DEBTOR'S projected disposable income be paid to unsecured creditors under her plan.  The TRUSTEE contends that the DEBTOR is improperly taking an operating and an ownership deduction on Form 22C for either the motor home or the fifth wheel as her second vehicle, because those vehicles are being used and paid for solely by the co-debtor.[4]  If the DEBTOR is not entitled to those deductions, but instead is only entitled to deduct an operating expense of $183, which represents the expense for one vehicle, her deductions would be reduced by $672. As a result, the DEBTOR'S monthly disposable income would be approximately $1,000. The DEBTOR maintains that the deductions were properly taken because her name is on the title to the motorhome and she is liable for the secured claim.

Section 1325(b)(1)(B) of the Bankruptcy Code provides that if the trustee or the holder of an allowed unsecured claim objects to confirmation, the court cannot confirm the

---

[3]Chase Home Finance also objected to confirmation of the plan based on its failure to provide for a prepetition arrearage of $326.87.  The DEBTOR does not dispute Chase's claim, and intends to amend the plan to provide for the arrearage after this matter is resolved.

[4]The TRUSTEE asserts that the fifth wheel, being unmotorized and not self-propelling, does not qualify as a "vehicle" for purposes of the transportation expenses, both operational and ownership, allotted a debtor under the means test. From the briefs filed by the DEBTOR, it is clear that she does not contend that the fifth wheel is a vehicle, but asserts the second ownership expense in connection with the motor home.

  According to the TRUSTEE'S recapitulation of the DEBTOR'S testimony at the first meeting of creditors, the motorhome and the fifth wheel belong to the codebtor and the codebtor makes the monthly payments and pays the operating expenses on both.  The DEBTOR and the co-debtor are joint obligors on the retail installment contract evidencing the purchase money loan for the motorhome, and are shown on the title as joint owners residing at the same address at that time.  The codebtor no longer resides with the DEBTOR.

3

plan unless, as of its effective date:

> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1)(B). Section 1325(b)(2) defines "disposable income" to mean "current monthly income," with certain adjustments, less amounts reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. If the debtor has current monthly income on an annualized basis that exceeds the applicable median family income for the state, the "amounts reasonably necessary to be expended" are to be determined in accordance with Section 707(b)(2)(A) and (B). 11 U.S.C. § 1325 (b)(3). Section 707(b)(2)(A)(ii)(I) provides:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides ....

The Seventh Circuit Court of Appeals has only addressed the application of means test deductions in two cases and each is claimed by one of the parties in support of their opposing positions. In *In re Ross-Tousey*, 549 F.3d 1148 (7th Cir. 2008), in the context of determining whether a presumption of abuse arose warranting dismissal or conversion of a chapter 7 case, the court held that a debtor was entitled to a vehicle ownership expense deduction for a vehicle that is not encumbered by a debt or lease. Adopting the "plain language" approach, the court held that the vehicle ownership deduction which is "applicable" to a debtor is the one that corresponds to the debtor's geographic region and

4

number of cars, regardless of whether that deduction is an actual expense which the debtor incurs. *Id.* at 1157-58. In *In re Turner*, 574 F.3d 349 (7th Cir. 2009), a Chapter 13 case, the court held that monthly payments on collateral which the debtor intends to surrender could not be deducted in determining the debtor's projected disposable income. Because the mortgage payment would "disappear" before confirmation, the court regarded the mortgage debt as a "phantom" deduction, determining that it is proper to take into consideration changes which have occurred in the debtor's financial circumstances.

The TRUSTEE relies on *Turner*, likening the expenses taken by the DEBTOR for a second vehicle not in her possession to the deduction for mortgage payments on property to be surrendered, which the court regarded as artificial. The DEBTOR claims that *Ross-Tousey* is controlling, and that the relevant inquiry for the Court here is only to determine the number of vehicles owned by the DEBTOR on the day the petition was filed.[5] The DEBTOR contends that the TRUSTEE, examining whether the DEBTOR exercises any of the usual incidents of ownership of the motorhome, has interjected a subjective inquiry into the determination, an approach which the Seventh Circuit firmly rejected in *Ross-Tousey*.

In reply, the TRUSTEE discredits the DEBTOR'S reliance on *Ross-Tousey*, maintaining that its determination that "applicable" controls over "actual" has no relevance here because the DEBTOR incurs no expenses at all in connection with the motorhome. The DEBTOR, contending that her position comports with both *Ross-Tousey* and *Turner*,

---

[5]The DEBTOR also relies on this Court's earlier decision in *In re White*, 382 B.R. 751 (Bankr.C.D.Ill. 2008), ruling that a Chapter 13 above median debtor is entitled to take an ownership expense deduction for a vehicle which is unencumbered. In so holding, this Court concluded that the standard expense allowances for vehicle ownership, housing and utilities are entitlements, available to debtors without regard to actual payments.

asserts that the former applies to standardized deductions whereas the applicability of the latter decision is limited to deductions for secured debt payments.

The issue here is two-fold. The first is whether the DEBTOR is entitled to an ownership deduction and an operating expense deduction in calculating her disposable income on Form 22C, as provided by Section 1325(b)(3). Second, even if those deductions may be properly deducted on Form 22C, the issue becomes whether the DEBTOR has committed her projected disposable income to the plan, as provided by Section 1325 (b)(1)(B). While the first may be generally categorized as a *Ross-Tousey* issue, the second squarely presents a *Turner* question. And in Chapter 13 cases, under *Turner*, the second issue entirely eclipses the first.[6]

This Court does not agree with the DEBTOR'S limited interpretation of *Turner*, but considers it controlling here. The court in *Turner* considered the calculation of "disposable income" as only a starting point for determining the debtor's "projected disposable income."[7] Warning bankruptcy courts not to engage in undue speculation about post-confirmation fluctuations in income or expenses, the court focused upon known information. Explaining its rationale, the court stated:

> Since the object of a Chapter 13 bankruptcy is to balance the need of the debtor to cover his living expenses against the interest of the unsecured creditors in recovering as much of what the debtor owes them as possible, we

---

[6] The Court will leave the issue of whether a debtor is entitled to an ownership deduction for a vehicle to which he holds registered title only to another day. *Ross-Tousey* did not address this question.

[7] The emerging majority view clearly recognizes that unlike Chapter 7, which employs a "snap shot" determination of the debtor's disposable income, the concept of "projected disposable income" encompasses a "forward looking" approach. *In re Rabener*, 2010 WL 335844 (Bankr.E.D.N.Y. 2010); *In re Mendelson*, 412 B.R. 75 (Bankr.E.D.N.Y. 2009); *In re Becquer*, 407 B.R. 435 (Bankr.S.D.Fla. 2009); *In re DeThample*, 390 B.R. 716 (Bankr.D.Kan. 2008); *contra Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868 (9th Cir. 2008); *In re Alexander*, 344 B.R. 742 (Bankr.E.D.N.C. 2006). As the court notes in *Turner*, this principle will not always work against the debtor.

6

> cannot see the merit in throwing out undisputed information, bearing on how much the debtor can afford to pay, that comes to light between the submission and approval of a plan of reorganization.

*Id.* at 355.

The court rejected the mechanical approach employed by courts such as *In re Kagenveama,* 541 F.3d 868 (9th Cir. 2008). The court adopted the reasoning of the Eighth Circuit in *In re Frederickson,* 545 F.3d 652 (8th Cir. 2008) that the means test calculation of disposable income is a "starting point" for determining projected disposable income and that changes in the debtor's financial circumstances that are known as of the time of confirmation can and should be considered.[8]

In contending that *Turner* only applies to secured debt payments, the DEBTOR overlooks the interrelationship between the standard deductions and secured debt payments. Under Form 22C's instructions, the average monthly mortgage payments made by the debtor are subtracted from the applicable IRS Local Standard for housing/mortgage expense, in order to determine a "net mortgage/rental expense."[9] As a result, for those debtors whose actual mortgage payment exceeds the local standard expense, the entire payment will be deducted as a secured debt expense. For those few debtors whose actual mortgage expense is less than the standard expense, both the secured debt expense and the balance of the standard expense are to be claimed as deductions in determining disposable income. In much the same way, the "allowable" standard transportation ownership expense is calculated by subtracting the average monthly payment for any debt secured by

---

[8] This issue is before the Supreme Court in *Hamilton v. Lanning,* Docket No. 08-998, argued March 22, 2010.

[9] A debtor may not enter an amount less than zero as a net mortgage/rental expense.

7

the vehicle from the standard ownership cost. The difference, if greater than zero, is the "net ownership expense" which is deducted as a standard expense.

Thus, elimination of a "fixed" expense may not only affect the deductions taken by the debtor for secured debt payments, but the entitlement to standard mortgage or transportation expenses as well. Generally, the two go hand in hand, at least as applied to mortgage debts and car loans. There can be little question that under *Turner*, the proposed surrender of a second vehicle by a debtor would result in an adjustment being made to the debtor's projected disposable income, based not only on the amount of the secured expense deduction taken in connection with that vehicle, but also upon any "phantom" expense resulting from the standardized transportation ownership cost and operating expense attributed to that vehicle.

For purposes of determining the DEBTOR'S projected disposable income, her disclaimer of interest in and liability for the motorhome must be treated the same as a surrender of collateral. The DEBTOR forthrightly admits that the co-debtor has exclusive possession, use and enjoyment of the motorhome and sole responsibility for the debt service payments and all other expenses associated therewith. Although her legal liability still exists, the DEBTOR pays nothing. In effect, her status is relegated to that of a guarantor. *Turner* directs courts not to disregard undisputed information that directly affects how much the DEBTOR can afford to pay.[10]

The erroneousness of the DEBTOR'S position is spotlighted by her failure to take a corresponding deduction for future payments on the motor home. Presenting this

---

[10]To the extent that use of the means test form for calculating the projected disposable income of above median debtors may result in a figure that does not reflect the current reality of a debtor's circumstances, *Turner* amounts to a push-back against that irrational result.

8

discrepancy as a perk to her creditors, the DEBTOR relies on *In re Quigley*, 391 B.R. 294 (Bankr.N.D.W.Va. 2008), asserting that it would be proper for her to take such deductions on both the motorhome and the fifth wheel. The DEBTOR'S reliance on *Quigley*, is misplaced, however. In *Quigley*, although the court permitted the debtor to take an ownership deduction for a vehicle which the codebtor was using and on which he was making the payments, the court required the debtor to include, as part of her current monthly income, the amount of the secured payments made by the nondebtor.

More importantly, both the analysis and result in *Quigley* run contrary to *Turner* and must be disregarded. Employing a *Turner*-like approach, the court in *In re Mendelson*, 412 B.R. 75 (Bankr.E.D.N.Y. 2009), held that a chapter 13 debtor was not entitled to a secured debt expense deduction for a vehicle which was driven exclusively by her former spouse and on which he was making the payments, even though the vehicle was jointly owned with the debtor and she was legally obligated on the debt. Coupled with the debtor's disavowal of any intention to make payments on the debt, the court considered that it would be "stretching the bounds of reason" to find that the repayment of the loan was reasonably necessary for the debtor's support.

Whether or not expense deductions may be taken on Form 22C for the motorhome, the line 59 figure is only a starting point for determining the DEBTOR'S projected disposable income, as dictated by *Turner*. It is undisputed that the DEBTOR has no actual expenses related to the motorhome; as to the DEBTOR, they are "phantom" expenses. This information may not be ignored for purposes of determining how much the DEBTOR is actually able to pay under a Chapter 13 plan. Since the proposed plan does not properly

account for this reality, it may not be confirmed. Confirmation of the plan will be denied and a status hearing will be scheduled.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###